[No. 5213.]
[No. 2825 C. A.]

## THE REBECCA GOLD MINING COMPANY (LIMITED) v. BAKER.

**Master and Servant—Action for Services—Evidence—Admissibility.**

In an action by plaintiff for services rendered defendant in watching certain property, the plaintiff alleged, and the defendant denied, re-employment after an admitted discharge. Held, that the offer in evidence of a lease executed by defendant to a third party, under which it was claimed the property was turned over to the latter on the day of the discharge of plaintiff, was admissible as tending to show that the services of plaintiff as a watchman were no longer needed in behalf of defendant; and that such fact would strongly corroborate defendant's claim of no re-employment, and its exclusion constitutes reversible error.— P. 291.

*Appeal from the District Court of Teller County.*
*Hon. Albert S. Frost, Judge.*

Action by John B. Baker against The Rebecca Gold Mining Company. From a judgment in favor of plaintiff, defendant appeals.                    *Reversed.*

Mr. M. B. CARPENTER and Mr. JOHN A. DEWEESE, for appellant.

Mr. J. MAURICE FINN and Messrs. TEMPLE & CRUMP, for appellee.

Mr. JUSTICE GODDARD delivered the opinion of the court:

This is an action to recover for services rendered by appellee, plaintiff below, as watchman upon the property of the appellant, defendant below. The complaint alleges that the defendant, on the 24th of June, A. D. 1901, employed the plaintiff to watch, guard, look after and protect all the personal property situate upon certain mining claims (describing them), for which services the defendant agreed to pay plaintiff the sum of three dollars per day; that plaintiff has been constantly employed guarding, watching and looking after the said premises, at the special instance and request of defendant, for the period of 379 days, the total value of which work amounts to $1,137; that defendant, at divers times, paid plaintiff sums aggregating $286.40, leaving a balance of $850.60 still due and unpaid.

Defendant answered, denying the allegations of the complaint. The cause was tried to a jury. The testimony disclosed that plaintiff went to work upon the property the 24th of June, 1901; that on December 21, 1901, he was discharged, and, upon settlement, then and there was due him $415. As to what occurred at that time, plaintiff testifies, *inter alia,* as follows:

"Mayhew (who was manager for the company, and by whom plaintiff was employed) said to me, 'John, you can go down home. Your time is up here.' 'Well,' I says, 'all right. Who is going to pay me?' * * * He says, 'Burbridge was to pay this debt.' Well, I told him he was never known to pay anything. I said, 'I am going to stay here until I get my money.'

He further testified that, when the time was reckoned up and the settlement made, Mayhew said: "John, you go back up to the mine and stay there

until Burbridge pays you, and keep track of your time.'' This conversation was denied by Mayhew *in toto*, who further testified that he did not re-employ the plaintiff after December 21, 1901, but that he turned the possession of the property over to a Mr. May for Burbridge and associates under lease; that he never recognized plaintiff as watchman after December 21.

Defendant also offered in evidence a lease executed by the company to Burbridge, under which it is claimed that possession of the premises was turned over to him on December 21, 1901. This offer was rejected.

We think the court erred in excluding this evidence. The execution of such a lease, and the entry into possession of the premises by the lessee thereunder, was very persuasive, if not conclusive, evidence that the services of the plaintiff as a watchman were no longer needed in behalf of the company, and that fact would strongly corroborate defendant's claim that there was no re-employment of the plaintiff, as claimed by him.

Furthermore, it is evident from plaintiff's own testimony, that he was influenced in his action in remaining upon the property after December 21 by reason of his mistaken notion that he was justified in doing so until his wages were paid, rather than because of a re-employment by the company. But, however that may be, in view of the conflict in the testimony as to the fact of the re-employment, the defendant was entitled to the benefit of the evidence offered, and its exclusion necessitates a reversal of this judgment.                             *Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.